IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| KANNIKA CHANHTHANISANE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:18-cv-00075-O-BP |
| § | |
| NANCY BERRYHILL, § | |
| Acting Commissioner of the Social § | |
| Security Administration, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE, NOTICE, AND ORDER**

Plaintiff Kannika Chanhthanisane ("Chanhthanisane") filed this action under 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA") and application for supplemental security income ("SSI") under Title XVI of the SSA. (ECF No. 1). After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed C. O'Connor **AFFIRM** the Commissioner's decision.

**FINDINGS AND CONCLUSIONS**

**I.   STATEMENT OF THE CASE**

Chanhthanisane protectively filed for DIB and SSI on April 28, 2015, alleging that her disability began on March 7, 2013. (Transcript ("Tr.") 10, 191-92, 197-202). The Commissioner initially denied her application for benefits on August 24, 2015 and upon reconsideration on December 14, 2015. (Tr. 122-125). Chanhthanisane requested a hearing, which was held before Administrative Law Judge ("ALJ") Brock Cima on November 30, 2016, with Chanhthanisane, her

attorney, and the ALJ in Fort Worth, Texas. (Tr. 10). The ALJ issued his decision on January 31, 2017, finding that Chanhthanisane was not disabled. (Tr. 7-20).

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Chanhthanisane had not engaged in substantial gainful activity since March 7, 2013, the alleged disability onset date. (Tr. 12). At step two, the ALJ determined that Chanhthanisane had the severe impairments of aspergilloma and total knee replacement of the left knee. (*Id.*). At step three, the ALJ found that Chanhthanisane's impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Pt. 404(p). (Tr. 13). In particular, the ALJ concluded that Chanhthanisane retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with excepted limitations. (Tr. 14). At step four, the ALJ determined that Chanhthanisane was able to perform her past relevant work. (Tr. 18). And at step five, the ALJ decided that there were a significant number of jobs in the national economy that Chanhthanisane could perform. (Tr. 19).

The Appeals Council denied review on December 15, 2017. (Tr. 1-5). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.   FACTUAL BACKGROUND

According to Chanhthanisane's pleadings, testimony at the administrative hearing, and the administrative record, Chanhthanisane was 50 years old on the alleged disability onset date, and 54 years old at the time of the administrative hearing. (Tr. 55). She completed a high school education. (Tr. 53, 55, 241). Her employment history included work as an electronics assembler

and inspector/hand packager. (Tr. 18, 62). Chanhthanisane asserts that her physical impairments render her disabled under the SSA.

### III. STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 197, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(g). "The claimant bears the burden of

showing that [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [his] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## IV.   ANALYSIS

Chanhthanisane raises two issues on appeal. She claims that the ALJ erred in finding that she (1) could perform her past relevant work and (2) retained her educational or language abilities to perform her past relevant work.

A.    **Substantial Evidence Supports the ALJ's Findings at Steps Three and Four.**

Chanhthanisane first contends that the ALJ erred in finding that she was not disabled because she retained the RFC to perform her past relevant work as an electronics assembler. (Plaintiff's Brief ("Pl.'s Br.") at 8-9). Chanhthanisane argues instead that she did not retain the physical ability to be an electronics assembler because this job's description in the *Dictionary of Occupational Titles* ("DOT") conflicts with the ALJ's RFC assessment and vocational expert's ("VE") testimony. (Pl.'s Br. at 10-11). The ALJ's RFC assessment was that Chanhthanisane could perform light work as defined in 20 C.F.R §§ 404.1567(b) and 416.967(b): (i) lifting or carrying 20 pounds occasionally and 10 pounds frequently; (ii) sitting for six hours and standing or walking for four hours in an eight-hour workday; (iii) pushing or pulling as much as she can lift or carry; (iv) occasionally climbing ramps and stairs; (v) balancing, stooping, or crouching, but never kneeling, crawling, or climbing ladders, ropes, or scaffolds; and (vi) tolerating occasional exposure to dust, odors, fumes, and pulmonary irritants. (Tr. 14).

Furthermore, the ALJ evaluated Chanhthanisane's medical evidence of record and identified diagnoses of aspergilloma, total knee replacement of the left knee, osteopenia, postoperative anemia that required iron supplementation, hypertension and gastroesophageal reflux disease, allergic rhinitis and loss of appetite. (Tr. 12-13). The ALJ then determined that only two of these diagnoses rose to "severe impairments:" aspergilloma and total knee replacement of the left knee. (Tr. 12). The ALJ determined that these "impairments were severe because they were more than slight abnormalities that had more than such minimal effect on [Chanhthanisane] that they were expected to interfere with her ability to work." (Tr. 13). In accordance with the correct legal standards, the ALJ considered the limiting effects of Chanhthanisane's severe and non-severe impairments in determining her RFC assessment and that none of her impairments met or

medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.*).

To arrive at this conclusion, the ALJ relied in part on the testimony of Chanhthanisane and the VE. The VE testified that an individual of Chanhthanisane's age, education, work experience, and RFC assessment limitations could return to work as an electronics assembler/inspector hand packager. (Tr. 18). The VE further testified that Chanhthanisane could perform these occupations as generally and actually performed because it is light work. (*Id.*). The VE also testified that her testimony is consistent with the information contained in the DOT, pursuant to Social Security Ruling 00-4p. (Tr. 19). Chanhthanisane, however, contends that the DOT describes electronics assembly work as "light exertionally," meaning it involves "a good deal of walking or standing" and "walking or standing to a significant degree." (Pl.'s Br. at 11; *DOT* 726.684-018 (G.P.O.), 1991 WL 679596).

Chanhthanisane argues that she cannot perform substantially all of the activities under the electronics assembler's job description because the ALJ determined that she could only walk or stand for four hours in an eight-hour workday. (Tr. 10-11). Chanhthanisane contends this amount of walking or standing is less than a "significant degree" of walking or standing, as detailed by the DOT's job description. (Pl.'s Br. at 11). As such, Chanhthanisane asserts that a conflict exists between the VE's testimony and the DOT's job description. (*Id.*). Chanhthanisane further contends that the ALJ reversibly erred when he failed to resolve this conflict before determining that she could return to her past relevant work as an electronics assembler, and that this determination was not based upon substantial evidence. (*Id.*).

Chanhthanisane's argument is misguided because the Fifth Circuit held in *Carey v. Apfel* that the DOT's job description should not be given a role that controls over more specific VE

testimony. 230 F.3d 131, 145 (5th Cir. 2000). Thus, an ALJ may consider the DOT's job description and the more specific testimony from the VE in determining whether a claimant is capable of performing her past relevant work. *Id.* at 145. In fact, the Fifth Circuit further determined that a VE's testimony need not be identical to that of the DOT's job description. *Id.* at 146-47. This is because the DOT's job description generally lists the maximum amount of work requirements for certain categories, such as "light work," but not specific work requirement ranges. SSR 00-4P (S.S.A.), 2000 WL 1898704 at *3. Therefore, the VE can provide specific ranges of work requirements and an ALJ can rely on this testimony and the DOT's job description to resolve a complex vocational issue. (*Id.*)

Here, the DOT's job description for an electronics assembler required "a good deal of walking or standing" and "walking or standing to a significant degree." (Pl.'s Br. at 11; *DOT* 726.684-018 (G.P.O.), 1991 WL 679596).This language broadly encompasses the specific range of working requirements for an electronics assembler that the VE testified about, which is walking for a maximum of four hours in an eight-hour workday. The VE's testimony is not in conflict with the DOT's job description, but rather expounds upon and adds clarity to a broad job description. Since there is no conflict between the DOT's job description for an electronics assembler and the VE's testimony, the ALJ did not need to resolve a conflict that did not exist. The ALJ applied the correct legal standards, properly relied upon both the DOT's job description and the VE's testimony, and correctly concluded that given Chanhthanisane's severe and non-severe impairments, she could perform her past relevant work as an electronics assembler.

B.  **Chanhthanisane Retained the Educational and Language Abilities to Perform Her Past Relevant Work.**

Chanhthanisane next argues that she did not retain the educational or language abilities to perform her past relevant work as an electronics assembler. (Pl's Br. at 12). Chanhthanisane asserts

that the ALJ only inquired and she answered that she had a high school education from Laos, but not from a United States high school. (Pl's Br. at 12; Tr. 55). Next, Chanhthanisane argues that during her ALJ hearing and throughout multiple doctor appointments between February 2014 and August 2016, she relied on a Laotian interpreter to communicate because she cannot speak English. (Pl's Br. at 12; Tr. 348, 357, 601). Chanhthanisane contends that because she had a Laotian high school education and relied on a Laotian interpreter to communicate with the ALJ and her medical providers, she cannot substantially perform her past relevant work as an electronics assembler. (Pl's Br. at 12-13).

To bolster her point, Chanhthanisane relies on the DOT's job description of an electronics assembler, which requires a reasoning and language development of two. *DOT* 726.684-018 (G.P.O.), 1991 WL 679596. This means that the claimant must have the ability to "carry out detailed . . . written or oral instructions," "read work orders," follow production drawings and sample assemblies, or "receive verbal instructions regarding duties to be performed." (*Id.*). Chanhthanisane contends that she cannot substantially perform the DOT's job description of an electronics assembler because her educational background and use of a Laotian interpreter suggests she does not have a reasoning and language development of two. (Pl's Br. at 12-13). As a result, Chanhthanisane alleges that another conflict exists between the reasoning and language requirements of an electronics assembler and her reasoning and language abilities. (Pl's Br. at 13). Finally, Chanhthanisane asserts that because this conflict was not resolved before the ALJ made his RFC assessment, the ALJ committed reversible error. (*Id.*)

To address this argument, the Court refers to the social security regulations, which state that "education . . . primarily mean[s] formal schooling or other training." 20 C.F.R. §§ 404.1564(a), 416.964(a). Furthermore, "high school education and above means abilities in

8

reasoning, arithmetic, and language acquired through formal schooling at a 12th grade level or above." 20 C.F.R. §§ 404.1564(b)(4), 416.964(b)(4). Given these rules and after a careful examination of the record, the ALJ properly determined that Chanhthanisane retained the educational and language abilities to perform her past relevant work as an electronics assembler.

Chanhthanisane admitted that she received a high school education in Laos. (Tr. 55). Under these facts, Chanhthanisane's high school education complies with the social security regulations because she never indicated that her Laotian high school education was not comparable to a United States high school education. Moreover, the regulations do not state that a claimant must have completed a high school education in the United States to have received "formal schooling at a 12th grade level or above" in order to comply.

Furthermore, Chanhthanisane testified that she understands and reads English a "little bit" and had two previous jobs. (Tr. 55-56). These jobs were similar to electronics assembly because Chanhthanisane refurbished laptop computers at one employer and then later refurbished cellular phones at a different employer. (*Id.*) Chanhthanisane also packaged and shipped these products, which is another similar characteristic of inspector hand packager, under the DOT's job description. (Tr. 56-57; *DOT* 559.687-074 (G.P.O.), 1991 WL 683797). If Chanhthanisane understood and read English enough to refurbish and package laptops and cellular phones, and if these jobs are similar to the DOT's job descriptions of an electronics assembler/inspector hand packager, she retained the educational and language abilities to resume her past relevant work. Accordingly, Chanhthanisane's argument that she did not retain the educational and language abilities to resume work as an electronics assembler/inspector hand packager fails.

Finally, Chanhthanisane alleges that the ALJ erred in relying on the VE's testimony that her previous two jobs closely matched the DOT's job description for an electronics assembler.

(Pl's Br. 13; Tr. 62). She argues that her previous laptop and cellular phone refurbishing jobs were not closely matched with that of an electronics assembler because the tasks of the latter include: "assembl[ing] electronic components, subassemblies, products, or systems." *DOT* 726.684-018 (G.P.O.), 1991 WL 679596. Chanhthanisane contends that because the DOT's job description of an electronics assembler does not mention laptop repair and that laptops were not in mass production in 1989 (when the DOT job description was released), this was not her "actual" past relevant work; and thus, she could not perform her past relevant work as the ALJ concluded. (Pl's Br. 14-15).

But, the industry designation for an electronics assembler is Radio, Television and Communications Equipment Industry; Electronic Components Accessories Industry; and Instruments and Apparatus Industry. *DOT* # 726.684-018, 1991 WL 679596 at *1. Since Chanhthanisane previously refurbished laptops and cellular phones, and these products fall within the "communications equipment, electronic components, instruments and apparatus industry," the ALJ did not err in relying on the VE's testimony that Chanhthanisane's past relevant work experience consisted of electronics assembly. Chanhthanisane does not refer to nor is the Court aware of any legal authority that states that the DOT's job description and the VE's testimony must be identical before the ALJ can rely on either or both for evidentiary support in arriving at his conclusion on this matter. Therefore, the ALJ's conclusion, with respect to this issue, was supported by substantial evidence.

## V.     CONCLUSION

The ALJ did not err in finding that Chanhthanisane (1) could perform her past relevant work and (2) retained her educational and language abilities to perform her past relevant work. Substantial evidence supports the ALJ's findings.

## RECOMMENDATION

Because the ALJ applied the proper legal standards and substantial evidence in the record supports the ALJ's factual findings, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's Findings, Conclusions, and Recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's Findings, Conclusions, and Recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party shall have until **September 6, 2018** to serve and file written objections to the United States Magistrate Judge's Findings, Conclusions, and Recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

It is so **ORDERED** on August 23, 2018.

                                                _____
                                                Hal R. Ray, Jr.
                                                UNITED STATES MAGISTRATE JUDGE